## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JUDY BOND** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-4125** |
| **MICHAEL J. ASTRUE, COMMISSIONER**<br>**SOCIAL SECURITY ADMINISTRATION** | **SECTION "S" (3)** |

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her application for supplemental security income ("SSI") payments under Title XVI of the Social Security Act ("SSA"). The issues presented on appeal are (1) whether substantial evidence supports the Administrative Law Judge's ("ALJ") residual functional capacity assessment, and (2) whether the ALJ properly analyzed plaintiff's credibility. The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that the plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

**I.     BACKGROUND**

Plaintiff is a 54-year old woman with a seventh-grade education and no past work experience. On August 30, 1999, an MRI of plaintiff's cervical spine revealed multi-level

degenerative disc disease with a small left paracentral C4-5 disc protrusion. (Adm. Rec. at 104). In March 2000, Dr. R.T. McAfee, an orthopedic surgeon, diagnosed plaintiff with degenerative disc disease. (*Id.* at 119). Dr. McAfee recommended that plaintiff "should avoid an occupation which requires frequent bending or stooping, one which requires working with her arms above shoulder level, or one which requires lifting and carrying objects greater than approximately 15 to 20 pounds, or one which requires standing." (*Id.*).

In September 2004, Dr. Karen P. Miller examined plaintiff, who at the time complained of neck and low back pain and dropping things. (*Id.* at 235). Dr. Miller noted that plaintiff walked with a cane and wore a brace on her left hand. (*Id.*). Dr. Miller also noted that plaintiff had been taking Darvocet but that it was not controlling her pain. (*Id.*). Dr. Miller prescribed her Percocet. (*Id.*)

On January 26, 2005, Dr. Tom Reinecke treated plaintiff at the North Oaks Medical Center Emergency Services. (*Id.* at 362-67). Complaining of headaches and back pain, plaintiff reported to Dr. Reinecke that she was taking ibuprofen and tylenol. (*Id.* at 362). Dr. Reinecke noted that plaintiff's current medication consisted of Soma and that she had recently visited the Emergency Room where she had been given a muscle relaxer, anti-inflammatory medication, and Lortab. (*Id.*). Dr. Reinecke gave plaintiff 650 mg of Tylenol and 1mg of Ativan. (*Id.* at 365).

On October 3, 2005, Dr. Robert Marshall examined plaintiff. (*Id.* at 403-04). Dr. Marshall diagnosed plaintiff with discs bulging at C3 through C7 with C6-7 thecal sac deformity. (*Id.* at 403). Dr. Marshall listed her pain level at 8/10. Dr. Marshall noted her current medication as Lortab, Soma and Xanax. (*Id.*). Diagnosing plaintiff with chronic low back pain and neck syndrome, Dr.

Marshall prescribed an additional 180 tablets of Lortab, 120 tablets of Soma, and 60 tablets of Xanax. (*Id.*). Between January 2006 and October 2007, Dr. Marshall treated plaintiff approximately 20 times. (*Id.* at 383-96, 398-402, 428-39, 441-42, 444-47, 449-50). Plaintiff consistently complained of neck pain and lower back pain, and, on various occasions, panic attacks, anxiety, headache, constipation, nausea, neck and back spasms, radiation of numbness and tingling in her legs, and decreased range of motion in her back and neck. (*Id.*). Throughout these visits, Dr. Marshall prescribed Percocet, Soma, Xanax, Fiorinal, Phenergan, Demerol, Norco, and Oxycodone. (*Id.*).

Throughout the period at issue, plaintiff visited several regional medical facilities at which she was treated and prescribed further medication. Plaintiff received treatment at North Oaks Medical Center Emergency Services eight times between January 26, 2005 and March 30, 2007. (*Id.* at 331-37, 338-43, 344-49, 366-67, 464-69, 473-75, 479-85, 488-96). Plaintiff received treatment at the North Monroe Medical Center on October 7, 2005. (*Id.* at 263-71). There, an MRI and an MRA of plaintiff's brain revealed a mass in her right anterior cranial fossa consistent with a meningioma. (*Id.* at 268-71). The next day, doctors at the Louisiana State University Medical Center excised the brain tumor. (*Id.* at 274-79).

Later, and on seven occasions between December 2005 and March 2006, plaintiff received treatment at the Winn Parish Medical Center Emergency Department for chronic, moderate to severe headaches. (*Id.* at 280-319). Doctors assessed her with chronic migraine headaches and prescribed Lortab, Phenergan, Dilantin, and Demerol. (*Id.*). In February 2006, plaintiff received Ultram for severe, throbbing headaches from the Natchitoches Parish Hospital Emergency Room. (*Id.* at 327-

3

28). One month later, she again received treatment at the Natchitoches facility. (*Id.* at 324-25). On December 7, 2006 (the same day plaintiff received treatment at the North Oaks emergency room), she received treatment at Lakeview Regional Hospital, where she was prescribed Lortab for chronic headaches status post-craniotomy. (*Id.* at 501-10). She reported to the staff at Lakeview Regional Hospital that she was on no medication, even though she had received Demerol and Phenergan and a prescription for Fioricet that same day from the doctors at the North Oaks facility. (*Id.* at 488-96, 503). Staff at the North Oaks facility noted that plaintiff was upset that she did not receive Lortab and refused a wheelchair at departure. (*Id.* at 492).

On January 16, 2007, Patrick M. Dennis, M.D. conducted a consultative examination on plaintiff. (*Id.* at 406-10). Dr. Dennis noted plaintiff's history of nausea associated with headaches and seizure activity. (*Id.* at 406). Dr. Dennis also noted that plaintiff reported no back or extremity pain. (*Id.*). Dr. Dennis reported:

> The patient is married with one child 28 years old. She is not currently working. The patient denies tobacco or drug use. She reports 7th grade education. She is able to perform household activities, but with some difficulty. She is able dress [sic] and feed herself independently. She is not able to drive and does not have a driver's license. She is not able to visit with family or friends. She denies any activities or hobbies.

(*Id.* at 407). Dr. Dennis noted her "estimated functional level of activity" as "[m]aximum lifting capacity is at 5 pounds. She is able to sit for 10 minutes, stand for approximately 10 to 15 minutes, and walk approximately 100 feet." (*Id.*). Dr. Dennis reported that plaintiff's gait was normal, that no assistive device was used to walk and that plaintiff was able to heel-to-toe walk. (*Id.* at 408). Dr. Dennis also reported that plaintiff was able to push, pull, reach, crouch, squat, and stoop

4

normally. (*Id.*).

In February 2007, a non-examining state agency consultant reported – on a Physical Residual Functional Capacity Assessment – that plaintiff had the ability to occasionally lift and/or carry 20 pounds and frequently lift and/or carry ten pounds. (*Id.* at 412). Moreover, the examiner reported that plaintiff could stand and/or walk and/or sit six hours in an eight-hour workday. (*Id.*). The examiner also opined that plaintiff could occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl, but never climb ropes and/or ladders. (*Id.* at 413). The examiner held that the severity of plaintiff's symptoms and their alleged effect on her functions was consistent with the total medical and non-medical evidence. (*Id.* at 416).

On March 31, 2007, plaintiff arrived at the St. Tammany Parish Hospital for treatment of a headache. (*Id.* at 473). She reported no current medication even though, one day earlier, at the North Oaks facility, staff had prescribed Lortab to her. (*Id.* at 475, 515). She ultimately left the St. Tammany Parish Hospital without having been treated. (*Id.* at 517).

In April 2007, plaintiff filled out a Disability Result-Adult. Plaintiff alleged an inability to work due to degenerative disc disease. (*Id.* at 192). She explained: "I can't sit up or sit still for a long period of time, it's hard to do a lot of things." (*Id.*). A Disability Report-Field Office report, completed the same date, noted that plaintiff had difficulty remembering names and dates and that she had to ask her spouse for help, but also that plaintiff had no difficulty hearing, reading, breathing, understanding, being coherent, concentrating, talking, answering, sitting, standing, walking, seeing, using hands, or writing. (*Id.*).

5

## II.     STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).   It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *See Boyd v. Apfel*, 239 F.3d  698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner.  *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. (1992).  Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135.  Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive.  *Ripley*,

67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III.   ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant, such as the plaintiff, is considered disabled only if her physical or mental impairment is so severe that she is unable to do not only her previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which she lives, whether a specific job vacancy exists, or whether she would be hired if she applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 t - 416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step

procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test – as he did here – the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work

8

history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV.   ISSUES ON APPEAL

There are two issues on appeal that this Court will address in turn:

(1)   Whether substantial evidence supports the ALJ's determination of residual functional capacity.

(2)   Whether the ALJ properly analyzed plaintiff's credibility.

## V. ANALYSIS

**1.   Whether substantial evidence supports the ALJ's determination of residual functional capacity.**

Citing Social Security Administration Ruling ("SSR") 96-8p, the Fifth Circuit has defined residual functional capacity ("RFC") as

> an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule. The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past work. . . . RFC involves both exertional and nonexertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately. In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular basis. . . . The RFC assessment must include a resolution of any inconsistencies in the evidence.

*Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (quoting SSR 96-8p) (internal citations and quotations omitted).

> Ultimately, the ALJ here determined that plaintiff has the following RFC:
>
> Therefore, in consideration of the claimant's functional limitations as corroborated by the objective medical evidence and State agency opinions, the undersigned finds that, in an 8-hour workday, the claimant retains the residual functional capacity to perform a wide range of "light" work as that term is defined in the Regulations. That is, she can lift/carry 10 pounds frequently and 20 pounds occasionally. She can push/pull a like amount. She can stand and/or walk up to 6 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday in a clean working environment, free from odors, dust, gases, and poor ventilation. She is precluded from balancing, climbing ladders, ropes and scaffolds, or working at unprotected heights or around dangerous moving machinery. However due to pain the claimant retains the residual functional capacity to understand, remember and carryout [sic] simple instructions, perform routine repetitive tasks, attend and concentrate for extended periods, respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting on a sustained basis.

(Adm. Rec. at 205-26).

Plaintiff first points out that the ALJ found plaintiff's headaches to be a severe impairment. (*Id.* at 19). Plaintiff argues that the ALJ erred in his RFC assessment because he failed to find that plaintiff's severe impairment – headaches – impacted the assessment. In *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001), the Fifth Circuit held that an ALJ errs when he fails to take into account a claimant's standing, walking, and pushing/pulling limitation. Stretching the *Myers* court's holding, plaintiff argues that the ALJ here erred when he "failed to discuss how [plaintiff's] headaches and Plaintiff's frequent need for medical treatment for this impairment, impacts her RFC by impairing her ability to work on a regular and continuing basis." (Pl.'s Mem. of Facts and Law [Doc. #11-3] at p. 14). Plaintiff points to numerous instances in the record where plaintiff complained of, was diagnosed with, and treated for her headaches. As plaintiff correctly notes, the ALJ asked the vocational expert at the oral hearing on plaintiff's claim how absences at work due to headaches

10

would impact a claimant's ability to retain employment. (Adm. Rec. at 550-51). In reply, the vocational expert testified that a claimant could miss no more than two days a month without the risk of termination from employment. (*Id.* at 551). Plaintiff argues that the ALJ ignored this testimony in his conclusion. According to plaintiff, the vocational expert's testimony – in and of itself – supports a finding that plaintiff is wholly unemployable.

Plaintiff appears to argue that an ALJ must explicitly mention a severe impairment in his ultimate RFC assessment.[1] But plaintiff has pointed this Court to no law – and this Court is aware of none – that would require an ALJ to mention a severe impairment in his ultimate RFC assessment. The evidence in the record as a whole belies any argument on plaintiff's part that the ALJ failed to consider plaintiff's headaches when he assessed her RFC and found that she is able to perform "light" work activities during a regular work day. The record is replete with undisputed findings that the ALJ considered plaintiff's ongoing complaints of headaches. For example, he noted that from December 2005 through December 2006, plaintiff was intermittently treated for headaches at Winn Parish Medical Center. (*Id.* at 22). He also noted, however, that "[p]hysical examinations during these visits repeatedly showed extremities to be within normal limits and an ability to ambulate without difficulty." (*Id.*). During these visits, plaintiff complained only of pain in her head and "was also repeatedly noted to be calm, well oriented, spontaneous, and able to obey

---

[1] Plaintiff also appears to intimate that a finding of a "severe impairment" automatically precludes a finding that a claimant can perform work-related activities. But this is not the case. It is common for an ALJ to conclude that – despite a claimant's severe impairment – the claimant can perform basic work-related activities. *See, e.g., Frames v. Barnhart*, 156 Fed. Appx. 688,690-91 (5th Cir. 2005) (affirming ALJ finding that claimant could perform basic work-related activities despite severe impairment).

11

commands despite her allegations of mental deficiencies." (*Id.*).

The ALJ also considered plaintiff's visits to Natchitoches Parish Hospital and North Oaks Health System with complaints of headaches. (*Id.*). He also noted that plaintiff complained of headaches and other ailments to Dr. Dennis in January 2007 even though she admitted at that time that she was taking no medication for any condition. (*Id.* at 23). Nevertheless – and given plaintiff's complaints of headaches – Dr. Dennis noted that she had full motion in all extremities, was alert, well groomed, and in no acute distress. (*Id.*). The ALJ noted that Dr. Dennis found that plaintiff's gait was normal and no assistive device was used. (*Id.*). Plaintiff was able to climb on and off the examining table and dress and undress independently. (*Id.*). The ALJ took into consideration that – despite plaintiff's complaints of headaches and other ailments to Dr. Dennis – she was able to push, pull, reach, crouch, squat and stoop normally. (*Id.*).

At the hearing before the ALJ, plaintiff testified that she has headaches a couple of times a week "but it might be a little longer before I get them." (*Id.* at 540). She testified that the pain is a dull ache or a sharp ache and does not go away. (*Id.*). Plaintiff testified that light and noise cause the headaches to worsen. (*Id.*). She also testified that she only goes to the emergency room when she cannot stop the pain of the headaches at home. (*Id.*).

Contrary to plaintiff's arguments, the ALJ thoroughly considered the objective medical evidence, physician reports and hearing testimony as to plaintiff's complaints of headaches and their impact on her daily activities. As the Commissioner notes in his cross-motion for summary judgment, the ALJ placed great weight on the fact that no treating physician or emergency room personnel ever restricted plaintiff's activities due to her headaches. (*Id.* at 24); *see also Leggett v.*

*Chater*, 67 F.3d 558, 565 & n.12 (5th Cir. 1995) (relying on plaintiff's daily activities and the fact that plaintiff's "doctors at no time restricted his physical activity" to affirm finding of no disability). Indeed, no treating physician during the relevant time period ever implied that plaintiff is unable to perform "light" work-related activities due to the pain caused by her headaches. The ALJ's duty is to resolve any inconsistencies in the evidence. *Myers*, 238 F.3d at 620. The ALJ performed that duty here, specifically considering plaintiff's complaints of headaches and the objective medical evidence of her ability to function at those times.

Plaintiff's heavy reliance on *Myers v. Apfel* is misplaced. There, the Fifth Circuit reversed an ALJ's disability determination because he failed to fully address the claimant's standing, walking and pushing/pulling and to set out whether the claimant could perform these demands on a regular and continuing basis. 238 F.3d at 621. Plaintiff appears to intimate that the ALJ must use the phrase "on a regular and continuing basis" to satisfy the *Myers* holding. No magical incantation is necessary though. Below, the ALJ addressed plaintiff's ability to stand, walk, push, pull, sit, lift, and carry; he addressed the frequency with which plaintiff could perform the activities described during an eight-hour workday; and the discussion of plaintiff's residual capacity included the evidence on which the ALJ relied. That is enough to satisfy the law in this Circuit. *See Bryant v. Astrue*, 272 Fed. Appx. 352, 356 (5th Cir. 2008).

While the ALJ did not explicitly relate plaintiff's severe impairment to the RFC assessment in the final paragraph of the assessment itself, the opinion of the ALJ reflects that he gave thorough consideration to plaintiff's complaints of headaches *and her ability to function at the time of those complaints*. The ALJ considered all of the evidence before him. As noted above, a finding of no

13

substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd*, 239 F.3d at 704. Substantial evidence in the form of objective medical evidence supports the ALJ's RFC assessment. Accordingly, this argument has no merit.

  **2.  Whether the ALJ properly analyzed plaintiff's credibility.**

  Plaintiff also challenges the ALJ's finding as to the credibility of plaintiff's complaints about the severity of her pain. It is well settled that the ALJ must consider subjective evidence of pain, but it is within the discretion of the ALJ to determine the pain's disabling nature. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981) & *Jones v. Heckler*, 702 F.2d 616, 621-22 (5th Cir. 1983)). The ALJ's determination is entitled to considerable deference. *Id.* (citing *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986). "Disabling pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment." *Id.* (citing *Haywood v. Sullivan*, 888 F.2d 1463, 1470 (5th Cir. 1989)).

  Social Security Ruling ("SSR") 96-7p, entitled "Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements," outlines the determination of a claimant's credibility.[2] "[A]n individual's statement(s) about his or her symptoms is not enough in itself to establish the existence of a physical or mental impairment or that the individual is disabled." SSR 96-7p, 1996 WL 374186, at *2. To evaluate an individual's credibility, the adjudicator must first determine whether the claimant has an

---

[2] The Fifth Circuit has noted that while they are not binding, SSRs "may be consulted when the statute at issue provides little guidance," and that the court itself has "frequently relied upon the rulings in evaluating ALJs' decisions." *Myers*, 238 F.3d at 620.

impairment that could cause the alleged symptoms, and such impairment must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *Id.* Second, if the claimant's statements about "the intensity, persistence, or functionally limiting effects of pain or other symptoms" are not substantiated by objective medical evidence, "the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.* The Fifth Circuit has held that the ALJ need not give subjective evidence precedence over medical evidence but that "a resolution of conflicts between the subjective evidence and the medical evidence should depend upon the ALJ's evaluation of the credibility of the claimant's complaints of pain." *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988).

Relying on *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988), plaintiff argues that the ALJ must give specific reasons for a credibility finding. Plaintiff also argues that the ALJ substituted his own lay opinion for that of a medical expert in violation of *Goodley v. Harris*, 608 F.2d 234, 236 n.1 (5th Cir. 1979). Neither argument has merit.

Here, the ALJ ultimately concluded:

> After considering the totality of the record, the undersigned is not persuaded by the claimant's allegation that the severity of functional limitation imposed by her impairments precludes the all work activity. While it is reasonable to expect that she would have some limitation in daily activities as a result of her impairments and resultant pain, no treating source has placed any restriction of activities of daily living on her. Upon discharge in October 2005 the claimant was released to activities as tolerated. Dr. Marshall's progress notes repeatedly showed that the claimant was able to perform activities of daily living with her medication. While she does not drive, nevertheless she grocery shops. The record also shows that she is social and has multiple friends (Exhibit B2E at 7). She also cares for her personal needs, cooks occasionally, washes dishes, and attempts to mop and sweep. She testified to an ability to walk ½ block. These activities are inconsistent with her allegations of incapacitating pain an [sic] limitation and rather suggest that she can

15

> perform at least a wide range of light work activities. This is not to minimize the medical impairments demonstrated in the record. The claimant certainly does have impairments that limit her activities, however, the clinical findings demonstrating these impairments fail to disclose any organic abnormality capable of producing pain of incapacitating proportions as alleged.

(Adm. Rec. at 24). The ALJ fulfilled his duties under Fifth Circuit law and neither incorrectly analyzed plaintiff's credibility nor substituted his own lay opinion for that of a medical expert. Here, the ALJ pointed to the conflict between the descriptions of plaintiff's physical symptoms and the descriptions contained in her medical records. *See Hollis*, 837 F.2d at 1385. Moreover, the ALJ pointed to the inconsistency between her testimony on pain and her daily activities. *See id.*; *see also Leggett*, 67 F.3d at 565 n.12 ("It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status."). The ALJ found it significant that "no treating source . . . placed any restriction of [sic] activities of daily living on her." (Adm. Rec. at 24). The ALJ then detailed the activities in which plaintiff engages: grocery shopping, caring for her personal needs, cooking occasionally, washing dishes and attempting to mop and sweep. (*Id.*). In addition, he found her social with multiple friends. (*Id.*). And he found it significant that plaintiff testified at her hearing that she can walk ½ block. (*Id.*). The duty of the ALJ here is to "provide a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's capacity to work." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). This, the ALJ has done. Contrary to plaintiff's arguments, there is no indication in the record that the ALJ rejected plaintiff's complaints solely on the basis of his personal observations. The choice that the ALJ made here – to credit plaintiff's medical records and evidence of daily activities and not plaintiff's subjective complaints – is supported by substantial evidence, and this Court may therefore

not overturn it.

Moreover, the Court does not find that the ALJ improperly substituted his own lay opinion for that of a medical expert. Plaintiff cites several example of this alleged substitution in her brief, none of which convinces the Court that plaintiff's argument has merit. For example, plaintiff cites the ALJ's finding that "[i]n August 1999 an MRI of the cervical spine revealed degenerative disc disease and a small left paracentral C4-5 disc protrusion, but *no evidence of cord contact or deformity*." (Adm. Rec. at 21) (emphasis added). Plaintiff then cites to the reference in the medical report: "At C6-7 there is asymmetric spondylosis, with obliteration of the ventral subarachnoid space, but *no evidence of cord deformity*." (*Id.* at 104) (emphasis added). Plaintiff argues that "[t]he ALJ acknowledges medically determinable impairments and then attempts to illustrate inconsistency or to minimize their severity[] by citing portions of medical reports that merely indicate that other impairments were not found." (Pl.'s Mem. of Facts and Law [Doc. #11-3] at p. 14). But it appears to this Court that the ALJ was simply restating the evidence as he found it in the medical reports. In any event, plaintiff's argument rings hollow in face of the fact that the ALJ specifically found that plaintiff has two severe impairments: degenerative disc disease of the cervical spine and residual headaches secondary to an October 2005 craniotomy. (*Id.* at 19).

In short, the ALJ *agreed* with the medical expert's opinions that plaintiff has two severe impairments. Accordingly, the Court rejects this argument. This Court has found no evidence in this record – and the plaintiff has failed to point the Court to any – that would suggest that the ALJ substituted his own opinion for that of a medical expert.

## VII. CONCLUSION

Plaintiff has failed to show that the ALJ's RFC assessment is not supported by substantial evidence or that he improperly analyzed her credibility. Substantial evidence supports the ALJ's finding that plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of the determination. Accordingly,

**IT IS RECOMMENDED** that the plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be dismissed with prejudice.

**NOTICE OF RIGHT TO OBJECT**

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 5th day of October, 2009.

*[signature: Daniel E. Knowles, III]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**